BOCANEGRA, PLAINTIFF AND APPELLEE, v. PORTILLA, DEFENDANT
AND APPELLANT.

APPEAL from the Second District Court of San Juan in an
Action of Debt.

No. 3303.—Decided August 2, 1924.

PROFESSIONAL SERVICES—SUPPORT—MEDICAL ATTENDANCE.—As a general rule the
    extraordinary expense incurred for medical treatment of the supported child
    is not included in the allowance for support and should be paid separately
    by the father, although in the case of acknowledged natural children the
    medical services were not engaged by the father but by the mother with
    whom the children lived.
ID.—ID.—ID.—REASONABLE VALUE OF SERVICES—COSTS.—In this case the father
    was sued for $1,000 for medical services rendered to his two children from
    July 8th to July 18th, 1922, and from August 14th to September 4th of the
    same year while they were ill. Held: That $200 was a sufficient compen-
    sation. Imposition of the costs upon the defendants was upheld for the rea-
    son that his attitude compelled the plaintiff to resort to the court.

The facts are stated in the opinion.
Mr. F. Soto Gras for the appellant.
Mr. B. Pagán for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the
court.

The judgment appealed from is as follows:

"On January 24, 1924, this case was tried, both parties being
present by their respective attorneys. The evidence of the plaintiff
consisted of four documents and the testimony of two witnesses and
that of the defendant of eight documents and the testimony of one
witness.

"The said evidence being considered as a whole together with
the pleadings, the court concludes that the facts and the law are
in favor of the plaintiff and against the defendant. It was ad-
mitted and proved:

"That the plaintiff, who is a physician in active practice, ren-

dered professional services to Eugenio Portilla and Angelina Carmen Portilla, acknowledged natural children of the defendant. Although it is true that he did not contract personally for the said services, the mother of the minor children had them under her care and *patria potestas* and called the plaintiff to render the services, which consisted of medical attendance upon both children from the 8th to the 18th of July, 1922, and from the 14th of August to the 4th of September, 1922, when both children suffered from attacks of diphtheria.

"During the attendance the plaintiff personally applied electrical massage to one of the patients.

"It was also shown that the father of these minors gave a monthly allowance of $45 to the mother and usually paid the expense of medical attendance and medicines that they needed. There was no special contract concerning the fees to be paid for such services.

"The court is of the opinion that the amount of $500 is a reasonable sum for the said fees and, therefore, renders judgment sustaining the complaint and adjudging the defendant to pay to the plaintiff the sum of $500 and the costs."

The defendant-appellant assigns that the court erred (1) in adjudging him to pay for services not contracted for by him which in any event were included in the allowance that he gave to his minor children; (2) in estimating the value of the services at $500, and (3) in imposing the costs upon him.

Let us examine the first assignment. It is admitted that the two children were the natural children of the defendant. Section 195 of the Civil Code, in so far as pertinent, reads thus: "A natural child has the right: 1.—To use the surname of the parent making the recognition. 2.—To be supported. * * * " What is meant by support? Section 212 of the Code answers the question: "Support is understood to be all that is indispensable for maintenance, housing, clothing and *medical attention,* according to the social position of the family." (Italics supplied.)

Manresa, in his Commentaries on the Civil Code, vol. 1, p. 608, (3rd Edition, 1907), says:

"Medical attendance was ordered already in the Roman Law

and although it was omitted in Law 2, Title 19 of the 4th *Partida*, it was not excluded from the meaning of support, for among the other things expressly provided in the law it was stated that sup-port should include all those other things which are necessary for life, among them the restoration and preservation of health; and that is the reason why in Law 5, Title 33 of the 7th *Partida* it is stated that the person supported is entitled when sick to whatever may be necessary to restore his health.''

The duty of the defendant, therefore, is evident. But he alleges that as he supplied an allowance of $45 a month for his children, this included what was necessary for medical attention. Although support includes medical attention, in fixing the amount to be given for support in cases of this kind the courts generally consider only maintenance, housing and clothing. Medical attendance is something special which is necessary on certain occasions and unless expressly determined the extraordinary expense which it requires is not included in the allowance and should be paid for separately. This was the interpretation of the defendant himself in this case. In testifying at the trial he said that on other occasions he had sent physicians for his account to treat his children and that once he paid Dr. Vergne $12 for one visit. He also indicated that he had in his possession receipts from the drugstore.

The defendant insists that he only and not the mother had authority to engage such services, making reference to the difference between a home lawfully constituted wherein the mother lives in the company of the father and the home of a mistress where the case is the contrary. Nor is he right in this, we think. The illness in both cases was serious. The services were necessary and urgent. The children were under the care of the mother and at her request the physician rendered his services without inquiring even who was the father. If there had been no father, perhaps the doctor would have charged a nominal fee or nothing, but there was a father whose duty it was to pay even if he did not

engage the services directly. The fact is that it is inconceivable that a father, living so near his children, did not know that they were in danger of death from diphtheria. Section 1795 of the Civil Code reads as follows: "When, without knowledge of the person who is bound to give support, a stranger supplies it, the latter shall have the right to demand the same from the father, unless it appears that he gave it out of charity, and without the intention of recovering it." Physicians in active practice do not render their services out of charity or without the intention of collecting for them when the family of the patient is able to pay.

Let us examine the second assignment. The plaintiff sued for $1,000 and at the trial testified that his services were worth $1,015, according to an itemized statement. Dr. Pereira Leal, testifying as an expert, said that the services were worth $2,000. The court gave judgment for $500. However, considering all of the attending circumstances, we are of the opinion that $200 is a fair compensation.

The court did not commit the third and last error assigned by the appellant. The plaintiff on several occasions attempted to collect his bill and was compelled by the defendant's attitude to resort to the courts. The defendant can. not complain of the consequences of his own acts.

The judgment should be modified in the manner stated and, as modified,

*Affirmed.*

Justices Hutchison and Franco Soto concurred.
Justices Wolf and Aldrey dissented.

### DISSENTING OPINION OF MR. JUSTICE WOLF.

In this case there was evidence tending to prove that the defendant on other occasions had sent his own physician to look after his natural acknowledged children. If a physician is to be chosen then it is the person who is to pay the bill who has the right to choose. In the case of a legitimate family the wife is the authorized agent of the husband to

obtain the services of a physician. This agency does not exist in the mother of a natural acknowledged child. She has no right to bind the father. I am disposed to concede that when there is an emergency a physician may be called in, that his assistance is necessary, and that the father may be held to be responsible for the emergency visit. There was no emergency demonstrated in this case and I doubt if any emergency could be proved beyond the first visit. Hence no contract arose, except perhaps for the first emergency visit.

Furthermore, given the presumption of honesty and good motives that exist in favor of any citizen, I see no reason to assume that the father in this case was delinquent in not finding out about his children. He may have had no actual notice despite his proximity to the house of his children. He may have been away when the sickness occurred. In any event I see no reason for assuming a lack of duty or humanity on his part until this attitude is proved.

I am authorized to state that Mr. Justice Aldrey joins in this dissent.